IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THE HANOVER INSURANCE COMPANY,   *

    Plaintiff,   *

vs.   *

                               CASE NO. 4:11-CV-41 (CDL)

HOLLEY CONSTRUCTION COMPANY &   *
ASSOCIATES, INC., DH&SS
INVESTMENTS, LLC, DANIEL F.   *
HOLLEY, JR., ANGELIA J. HOLLEY,
SUSAN S. SHACKLEFORD, and   *
STEVEN B. SHACKLEFORD,
                          *

    Defendants.
                          *

O R D E R

    Plaintiff The Hanover Insurance Company ("Hanover") issued several surety bonds on behalf of Defendant Holley Construction Company & Associates, Inc. ("Holley Construction") in connection with construction projects at Ft. Benning, Georgia and Birmingham, Alabama.  In issuing those bonds, Hanover relied on an indemnity agreement executed by Defendants Holley Construction, DH & SS Investments, LLC, Daniel Holley, Jr., Angelia Holley (collectively, "Defendants") in favor of Hanover. Hanover contends that liability has been asserted against it pursuant to the bonds.  Hanover asserts that Defendants are contractually obligated under the indemnity agreement to deposit collateral with Hanover in the amount of $6,604,328.21.  Hanover seeks a preliminary injunction ordering Defendants to deposit

$6,604,328.21 with Hanover in trust as collateral security.  For the reasons set forth below, Hanover's Motion for Preliminary Injunction (ECF No. 31) is granted, and Defendants are ordered to deposit $6,604,328.21 with Hanover in trust as collateral security within thirty days of the date of this Order.

FACTUAL BACKGROUND

In April 2005, Defendants executed an Agreement of Indemnity in favor of Hanover ("Indemnity Agreement").  Pl.'s Mot. for Prelim. Inj. Attach. 2, Sanford Aff. ¶ 2, ECF No. 31-2; Sanford Aff. Ex. 1, Agreement of Indemnity, ECF No. 31-2 at 8-15 [hereinafter Indemnity Agreement].  Susan Shackelford and Steven Shackelford also signed the Indemnity Agreement.[1]  Indemnity Agreement, ECF No. 31-2 at 10, 12 & 14.  Holley Construction, as a subcontractor, entered into a construction contract with M.A. Mortensen Company ("Mortensen"), general contractor, to furnish and erect pre-engineered buildings at Ft. Benning ("Ft. Benning Subcontract").  Sanford Aff. ¶ 3.  In connection with the Ft. Benning Subcontract and in reliance on the Indemnity Agreement, Hanover issued a subcontractor performance bond and a subcontractor labor and material payment bond on behalf of Holley Construction.  *Id.*  Holley Construction also entered into

---

[1] After Hanover filed the pending motion for a preliminary injunction, Hanover amended its Complaint to include the Shacklefords as Defendants.  Am. Compl. 1, 2 ¶¶ 6-7, ECF No. 37.  The Shacklefords were not parties to this action when Hanover filed the preliminary injunction motion before this Court.

a construction contract with Lakeshore Holdings, LLC ("Lakeshore"), under which Holley Construction was the general contractor for the construction of a hotel in Birmingham, Alabama ("Candlewood Suites Contract"). *Id.* ¶ 9. In connection with the Candlewood Suites Contract and in reliance on the Indemnity Agreement, Hanover issued a performance bond and a labor and material payment bond on behalf of Holley Construction. *Id.*

Under the Indemnity Agreement, Defendants agreed to:

exonerate, indemnify, and save harmless [Hanover] from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Hanover] may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees: (a) by having executed or procured the execution of the bonds; or (b) in making an independent investigation of any claim, demand, or suit; or (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether [Hanover], in its sole discretion, elects to employ its own attorney or permits or requires [Defendants] to defend [Hanover]; or (d) in enforcing any of the covenants, terms and conditions of this agreement.

Indemnity Agreement ¶ 2. The Indemnity Agreement further states:

Payment shall be made to [Hanover] by [Defendants] as soon as liability exists or is asserted against [Hanover], whether or not [Hanover] shall have made any payment therefore. Such payment to [Hanover] shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand or suit asserted against the bond or bonds by any claimant or obligee, plus the amount [Hanover] deems sufficient, in its sole

discretion, to indemnify and hold it harmless from and
against any loss, cost, interest and expense necessary
to defend, investigate, or adjust the claim, demand,
or suit. . . .  [Hanover] shall have the right to hold
such funds as collateral (without any obligation to
earn interest on the collateral for [Defendants])
until [Defendants] serve evidence satisfactory to
[Hanover] of its discharge from all bonds and all
liability by reason thereof, and to use such funds or
any part thereof, at any time, in payment or
settlement of any judgment, claim, liability, loss,
damage, fees, or any other expense.

*Id.* ¶ 3.

In September 2010, Hanover "learned that Holley
construction was encountering a number of problems associated
with" the Ft. Benning Subcontract and the Candlewood Suites
Contract.  Sanford Aff. ¶¶ 4, 10.  With regard to the Ft.
Benning Subcontract, Mortensen declared that Holley Construction
was in default under the Ft. Benning Subcontract and demanded
that Hanover honor the bond by remedying the default and
proceeding to complete the Subcontract or to arrange for a
Subcontract between Mortensen and a "responsible bidder."
*Id.* ¶ 4.  Hanover investigated its potential liability to
Mortensen under the Ft. Benning performance bond by retaining
counsel; discussing the claims with representatives of
Mortensen, Holley Construction and Holley Construction's
subcontractors; and exploring methods of resolving any potential
claims.  *Id.* ¶ 5.  Mortensen eventually terminated Holley
Construction's right to complete the Ft. Benning Subcontract,

and Mortensen asserts liability against Hanover under the Ft. Benning bonds in the amount of $4,846,825 ($3,274,236 under the Ft. Benning performance bond and $1,572,589 under the Ft. Benning payment bond). *Id.* ¶¶ 6-7; *accord* Sanford Aff. Ex. 3, Damages to Mortensen, ECF No. 31-2 at 22. Hanover has denied Mortensen's claims on a number of grounds. Sanford Aff. ¶ 7. Defendants assert that Hanover "has in its possession detailed evidence showing that Holley Construction does not owe any money to Mortensen, but in fact, Mortensen breached its agreement with Holley Construction and owes Holley Construction over $3 Million." Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. 3, ECF No. 33 [hereinafter Defs.' Resp.]. Hanover "anticipates that it may incur costs and expenses, including attorneys' fees and consultants' fees, in excess of $250,000 while defending Mortensen's claims against the Ft. Benning Bonds." Sanford Aff. ¶ 7. Hanover also avers that "certain of Holley Construction's subcontractors and/or suppliers have also asserted liability against Hanover in the amount of $56,589.88" under the Ft. Benning payment bond. *Id.* ¶ 8.

With regard to the Candlewood Suites Contract, Hanover "learned that Holley Construction was encountering problems associated with" the contract and anticipated claims against the Candlewood Suites bonds. *Id.* ¶ 10. Hanover investigated its potential liability to Lakeshore under the Candlewood Suites

bonds by retaining counsel; discussing the claims with
representatives of Lakeshore, Holley Construction and Holley
Construction's subcontractors; and exploring methods of
resolving any potential claims. *Id.* Lakeshore declared Holley
Construction to be in default and terminated Holley
Construction's right to complete the contract. *Id.* Hanover and
Lakeshore entered an agreement to complete the Candlewood Suites
contract through a completion contractor, and "Hanover
anticipates that it will incur a net loss of $1,100,000 under
the Candlewood Suites Performance Bond to complete Holley
Construction's unfinished work under the Candlewood Suites
Contract." *Id.* ¶ 11. Hanover also represents that it
"continues to face exposure relative to unresolved claims
against the Candlewood Suites Payment Bond totaling
$350,913.33." *Id.* ¶ 12.

It is undisputed that Defendants have not deposited any
collateral with Hanover. Hanover seeks a preliminary injunction
(1) ordering Defendants to deposit collateral with Hanover in
the amount of $5,504,328.21 based on liability asserted against
Hanover under the Ft. Benning bonds and the Candlewood Suites
payment bond, (2) ordering Defendants to deposit collateral with
Hanover in the amount of $1,100,000.00 based on Lakeshore's
claim against the Candlewood Suites performance bond, and (3)
ordering that Defendants be restrained from disposing of any of

their assets pending their deposit of collateral other than in the ordinary course of business and as necessary to meet ordinary and necessary living expenses.

DISCUSSION

## I.   Preliminary Injunction Standard

A preliminary injunction "is an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Id.* "A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). To prevail on an application for a preliminary injunction, Hanover must establish: (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [Hanover] outweighs whatever damage the proposed injunction may cause [Defendants]; and (4) if issued, the injunction would not be adverse to the public interest." *Bloedorn*, 631 F.3d at 1229.

## II.   Likelihood of Success on the Merits

Hanover seeks specific performance of the provision in the Indemnity Agreement requiring Defendants to provide collateral that Hanover is to hold in reserve until it is determined

7

whether claims on the bonds must be paid.  If the claims must be paid, then Hanover may pay the loss from those funds, but if the claims are ultimately denied, then Hanover must return those funds (less costs and attorneys' fees) to Defendants.  Hanover contends that it has a substantial likelihood of success on the merits of its claim for specific performance of the Indemnity Agreement's collateral security provision.

"Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance." O.C.G.A. § 23-2-130.  Specific performance is an equitable remedy that can only be granted if there is no adequate remedy at law, and it may not be granted "unless strictly equitable and just." *Kirkley v. Jones*, 250 Ga. App. 113, 115-16, 550 S.E.2d 686, 690 (2001).  "A contract upon which specific performance is sought must be certain, definite, and clear; and so precise in its terms that neither party can reasonably misunderstand it." *Hibbard v. McMillan*, 284 Ga. App. 753, 755, 645 S.E.2d 356, 359 (2007) (internal quotation marks omitted).  "It is not necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to

ascertain the terms and conditions on which the parties intended to bind themselves." *Id.* (internal quotation marks omitted).

Georgia courts have consistently "upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds." *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627, 600 S.E.2d 712, 715 (2004); *accord Nguyen v. Lumbersmens Mut. Cas. Co.*, 261 Ga. App. 553, 555, 583 S.E.2d 220, 223 (2003); *see also Am. Cas. Co. of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002) ("Under Georgia law, parties to an insurance bond are bound by its plain and unambiguous terms."). The Court must "apply the ordinary rules of contract construction." *Anderson*, 267 Ga. App. at 627, 600 S.E.2d at 715.

It is undisputed that Defendants executed the Indemnity Agreement and are bound by it; Defendants have offered no evidence that the Indemnity Agreement is not enforceable. The language of the Indemnity Agreement is unambiguous and definite, and Defendants do not contend otherwise. The Indemnity Agreement requires that Defendants make payment to Hanover "as soon as liability exists *or is asserted against [Hanover], whether or not [Hanover] shall have made any payment therefore.*" Indemnity Agreement ¶ 3. The Indemnity Agreement requires that if the amount asserted as a claim against the bonds "is an ascertainable or liquidated amount," the amount of the payment

to Hanover "shall be" the amount of the claim asserted against the bonds by any claimant, "plus the amount [Hanover] deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest and expense necessary to defend, investigate, or adjust the claim, demand, or suit." *Id.* Finally, the Agreement provides that "[Hanover] shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for [Defendants]) until [Defendants] serve evidence satisfactory to [Hanover] of its discharge from all bonds and all liability by reason thereof." *Id.*

It is also undisputed that claims have been made against the Ft. Benning bonds and the Candlewood Suites bonds and that the total amount of those claims is $6,604,328.21: $5,504,328.21 based on liability asserted against Hanover under the Ft. Benning bonds and the Candlewood Suites payment bond and $1,100,000.00 based on Lakeshore's claim against the Candlewood Suites performance bond. Defendants have not presented any evidence that such claims have not been asserted against the bonds. However, Defendants contend that the "mere assertion of claims" against the bonds does not give rise to an obligation for Defendants to deposit collateral. Defs.' Resp. 3. Under the plain language of the Indemnity Agreement, however, Defendants must make payment to Hanover "as soon as liability

exists *or is asserted against [Hanover], whether or not [Hanover] shall have made any payment therefore.*"   Indemnity Agreement ¶ 3.

Defendants also assert that the claims against the bonds are not valid and that Hanover "has in its possession detailed evidence showing that Holley Construction does not owe any money to Mortensen, but in fact, Mortensen breached its agreement with Holley Construction and owes Holley Construction over $3 Million."   Defs.' Resp. 3.   The Court interprets this assertion as an argument that Hanover cannot continue to demand collateral because Defendants have served evidence that should be satisfactory to show that Mortensen's claims are invalid and thus Hanover does not have any liability under the Ft. Benning Bonds.   The Court recognizes that in cases where a decision is left to the discretion of a surety, the question for the Court is whether that decision "was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion." *Nguyen*, 261 Ga. App. at 555, 583 S.E.2d at 223.   Defendants, however, pointed the Court to no evidence regarding the validity of any of the claims against the bonds, much less evidence that Hanover has acted in bad faith in continuing to demand collateral after receiving the evidence Defendants contend they provided.

The remaining question is whether Hanover has an adequate remedy at law for its claim.   The Georgia courts have not specifically answered this question, but other courts have concluded that sureties are ordinarily entitled to specific performance of collateral security clauses.   *E.g., Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*, No. 4:10-CV-1160 CAS, 2011 WL 3439129, at *6 (E.D. Mo. Aug. 5, 2011); *accord Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984).   The rationale for this conclusion is that although damages might be available to the surety in the future, the surety "bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond," and the availability of damages after trial would not protect a surety from a present risk of exposure.   *Lake Asphalt Paving & Constr., LLC*, 2011 WL 3439129, at *5-*6; *accord Schwab*, 739 F.2d at 433 ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.") (internal quotation marks omitted).   The Courts finds this rationale to be persuasive and concludes that Hanover does not have an adequate remedy at law for its claim for specific performance of the Indemnity Agreement's collateral security provision.

As discussed above, the language of the Indemnity Agreement is clear and unambiguous; it is undisputed that Defendants are

bound by the Indemnity Agreement; it is undisputed that claims have been made against the Ft. Benning bonds and the Candlewood Suites bonds; and there is no evidence in the present record that Hanover has acted in bad faith in demanding collateral in accordance with the Indemnity Agreement. Moreover, the Court has concluded that Hanover does not have an adequate remedy at law for its claim. For all of these reasons, the Court finds that Hanover has established a substantial likelihood of success on the merits. *Cf. Great Am. Ins. Co. v. Conart, Inc.*, No. 1:05-CV-038 (WLS), 2006 WL 839197, at *5 (M.D. Ga. Mar. 29, 2006) (finding substantial likelihood on the merits that surety would succeed on the merits of case seeking specific performance of collateral security provision of indemnity agreement).

## III. Irreparable Injury to Hanover

As discussed above, the Court has found that Hanover's right to collateralization cannot be remedied through monetary damages. For the same reasons, the Court concludes that Hanover would suffer irreparable injury absent a preliminary injunction. *See, e.g., Int'l Fid. Ins. Co. v. Anchor Envtl., Inc.*, Civil Action No. 07-04750, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008) ("If [the surety] is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect [the surety] from becoming a general

13

creditor, the grant of specific performance to enforce the collateral security provision is warranted.").

## IV.  Balance of Injuries

Defendants argue that they will suffer more harm than Hanover if the Court were to issue a preliminary injunction because they would likely have to declare bankruptcy if they were required to comply with the Indemnity Agreement's collateral security provision.  Though the Court is sympathetic to Defendants' financial difficulties, the Court must reject this argument.  Although Defendants may suffer harm as a result of the injunction, this harm is the result of enforcement of an Indemnity Agreement which Defendants entered; an injunction would only require Defendants to do that which they agreed to do.  Moreover, as surety, Hanover is allowed to hold funds posted by Defendants in trust for payment of the claims related to the bonds at issue.  All other funds must be returned to Defendants.  In contrast, if the Court denied a preliminary injunction, Hanover would have to continue using its own funds to defend the claims against the bonds.  Based on the present record, therefore, the Court finds that the balancing of the respective equities weighs in favor of Hanover.

## V.  Public Interest Concerns

Defendants have not demonstrated that the terms of the Indemnity Agreement are unenforceable due to public policy

concerns.   The Court finds that enforcement of an enforceable collateral security provision in an Indemnity Agreement would not be adverse to the public interest.

Defendants contend that it would not be appropriate to grant Hanover equitable relief in the form of a preliminary injunction because Hanover did not, in their original Complaint, name as Defendants Susan Shackelford and Steven Shackelford, who also signed the Indemnity Agreement.   Defendants contend that Hanover has released the Shackelfords from any obligation under the Indemnity Agreement.   Hanover, however, has presented evidence that it has *not* released the Shackelfords from their obligations.   Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss Attach. 1, Sanford Aff. ¶ 5, ECF No. 25-1.   Moreover, Hanover pursued its claims against the Shackelfords in the Bankruptcy Court.   *See generally* Pl.'s Reply in Supp. of Mot. for Prelim. Inj. Ex. 1, Proof of Claim, ECF No. 34-1.   And in its Amended Complaint, Hanover named the Shackelfords as Defendants.   Am. Compl. 1, 2 ¶¶ 6-7, ECF No. 37.   Based on the present record, the Court finds that Hanover never waived its right to seek relief against the Shacklefords.   Accordingly, Hanover's failure to name the Shackelfords as Defendants in the original Complaint does not render the relief sought by Hanover to be against public policy, and it does not warrant dismissal of the action.

CONCLUSION

For all of the reasons discussed above, the Court finds that Hanover has carried its burden of demonstrating that it is entitled to a preliminary injunction enforcing the Indemnity Agreement's collateral security provision.  Therefore, Hanover's Motion for Preliminary Injunction (ECF No. 31) is granted, and Defendants are ordered to deposit $6,604,328.21 with Hanover in trust as collateral security within thirty days of the date of this Order.  Defendants' renewed motion to dismiss is denied.

Because Defendants Susan Shackleford and Steven Shackleford were not served until recently with Hanover's Complaint and Motion for Preliminary Injunction, they have not had an opportunity to respond to the Motion for Preliminary Injunction.  Therefore, today's Order is temporarily stayed (only as to Susan and Steven Shackleford), until they have an opportunity to show cause as to why the preliminary injunction should not likewise apply to them.  Susan and Steven Shackleford are accordingly ordered to file a response to Hanover's Motion for Preliminary Injunction by February 27, 2012.

IT IS SO ORDERED, this 7th day of February, 2012.

S/Clay D. Land
                    CLAY D. LAND
              UNITED STATES DISTRICT JUDGE